UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | |
| MIDTOWN DEVELOPMENT, LLC, | Chapter 11 |
| Debtor | Bankruptcy No. 21-00478 |

### RULING ON DEBTOR'S MOTION FOR ORDER APPROVING SALE OF ASSETS FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES

This matter came before the Court for a hearing with both in-court and TEAMS video conference appearances on April 11, 2023. Ronald Martin appeared in person and Erica Yoder appeared via TEAMS for the Debtor. Janet Reasoner appeared in person and L. Ashley Wieck appeared via TEAMS for the United States Trustee. Robert Gainer appeared in person for OSK XII, LLC and Abram Carls appeared in person for MBM Development, LLC. The Court took evidence, heard argument, and took the matter under advisement with post-hearing briefs required. This is a core proceeding under 28 U.S.C. § 157(b)(2).

### STATEMENT OF THE CASE

Debtor's Motion for Order Approving Sale of Assets (Doc. 262) requests this Court to authorize the sale of property located at 501 Sycamore Street, Waterloo, IA 50703 (the "Black's Building") to buyer MBM Development, LLC ("MBM"), the highest bidder of an online auction through Ten-X, the auction company. Secured creditor OSK XII, LLC ("OSK") objects to the sale, contending that it wanted to exercise its rights under 11 U.S.C. § 363(k) to credit bid during the auction but was

1

denied that right by Ten-X. On April 10, 2023, OSK also filed a Notice of Credit Bid (Doc. 290) outlining its credit bid of $3 million plus any outstanding property taxes on Black's Building.  Upon review of the record, the Court finds that OSK did not waive its statutory right to credit bid, was improperly denied that right at auction, and has now submitted the highest and best bid that is hereby approved by this Court.

## FACTUAL BACKGROUND

Debtor is an Iowa limited liability company with its principal place of business located at the Black's Building in Waterloo, Iowa, which it leases commercial and residential space and operates an events business. Debtor filed a petition for Chapter 11 relief in this Court on May 25, 2021, and subsequently moved to sell their primary asset, the Black's Building.  Debtor received a purchase offer of $7.5 million and entered into an agreement to sell the Black's Building to Covalt & Company Colorado Properties, LLC of Denver, Colorado, ("Covalt") that ultimately fell through.  Debtor resumed efforts to sell at a reduced price, but no tangible offers materialized.

Debtor filed its Chapter 11 liquidation-focused plan (Doc. 165) on August 24, 2022, that included the eventual sale of the Black's Building.  OSK objected to the plan on multiple grounds, the most relevant of which was that the plan gave "no explanation of the proposed sale procedures or protections for secured creditors." Doc. 185, ¶13.  To address these objections, Debtor included a timeline for marketing the Black's Building in its exhibits for the Plan Confirmation hearing.  Doc. 221. The timeline provided 120 days for conventional marketing and if unsuccessful, an auction of the Black's Building.  The timeline envisioned a closing by the end of February or the first part of March 2023.  In expectation of the Plan Confirmation Hearing, Debtor also filed a Motion to Amend re: Order Regarding Motion for Sale of Property (Doc. 221) on January 9, 2023, to incorporate its plan to sell the Black's

Building by auction with Ten-X if no conventional offer materialized in time. OSK objected on January 30, 2023 (Doc. 230) in part wanting to avoid an additional "transaction fee" to Ten-X if OSK's credit bid was the successful bid. The Court ultimately granted Debtor's Motion to Amend at Doc. 244 on February 16, 2023, after proper notice and hearing.

Debtor proceeded with the Ten-X auction but OSK XII, LLC was disallowed from entering a credit bid by Ten-X (Doc. 282) and the highest bid was ultimately $1.9 million by MBM. Debtor then moved for an order approving its sale of Black's Building to MBM for $1.9 million (Doc. 262) to which OSK timely objected (Doc. 270) and tendered their own credit bid of $3 million plus any outstanding property taxes on the building. Doc. 290.

## CONCLUSIONS OF LAW

The issue before this Court is whether to approve a sale of the major asset in this case after an auction. A secured creditor, OSK, objects. OSK argues that Debtor has failed to meet its burden under 11. U.S.C. § 363(f) which states:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

See also In re Miell, 2010 WL 1258196 (Bankr. N.D. Iowa Mar. 29, 2010) (analyzing § 363(f)).

3

OSK argues that Debtor has failed to meet its burden under § 363(f) and has never even attempted to do so. Debtor disagrees and argues § 363(f) has been satisfied. The Court need not address that issue because this can be decided on other dispositive grounds.

### I. OSK is a secured creditor with a right to credit bid.

The Court agrees with OSK's argument that § 363(k) expressly allows it to credit bid and that right was denied to OSK here. Section 363(k) states:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

OSK has asserted a secured claim of $4,439,775.66. No one has objected to that claim or suggested that OSK is anything other than a secured creditor with a right to credit bid.

### II. OSK did not waive its right to credit bid.

MBM, the prevailing party at the auction, has argued that OSK forfeited or waived its credit bidding rights under § 363(k) because OSK failed to object to the bid procedures of the Court-approved sale and failed to raise the credit bid issue at the auction. In making this argument, MBM relies on In re Murray Metallurgical Coal Holdings, LLC, 618 B.R. 825 (Bankr. S.D. Ohio 2020). There the Court upheld the sale over a secured creditor's objection because "[t]he time to object on the basis of a purported denial of the right to credit bid was in response to the motion that set the parameters for bidding" and that if the creditor "wanted to preserve the right to credit bid on the Collateral without participating in a Qualified Bid for substantially all the assets, then it should not have signed on to the Agreed Bidding Procedures Order." Id. at 830, 832. OSK argues that Murray Metallurgical does not control here

4

because OSK never agreed to the auction procedure that was actually used, which prevented OSK from exercising its right to credit bid. Further, OSK contends that it repeatedly asserted its right to credit bid in its various filings. The Court agrees with OSK.

### a. OSK had no reason to object to the written bid procedures.

MBM argues that OSK waived its arguments about credit bidding by failing to raise them earlier. The Court rejects these arguments for several reasons. Credit bidding was not addressed by the written bid procedures and OSK has consistently asserted its right and intent to credit bid. This argument was not waived when bid procedures were adopted because OSK had objected to pay the auctioneer if it prevailed on its credit bid, thereby demonstrated both its right and intent to do so. Doc. 230. The bid procedures as adopted did not purport to prohibit credit bids, so OSK had no reason to object at the time the procedures were approved.

### b. OSK attempted and was denied its right to credit bid at the auction, thereby preserving their rights under § 363(k).

The credit bid issue arose just before and during the auction when there were discussions about what the proper form for a credit bid was under the Ten-X auction procedures. These bid procedures required a verification of funds and Ten-X took the position that the proposed credit bid by OSK did not meet its requirement. After involved conversations between OSK and Ten-X and internal conferrals by Ten-X with its upper management, Ten-X concluded that OSK could not credit bid at the auction. The record shows that it is undisputed that OSK asserted its right to credit bid and was denied that right. Further, OSK continued discussions such that everyone involved in the auction knew that OSK being blocked from credit bidding posed a potential problem for the validity of the auction. After the auction, Debtors moved the Court to approve the sale from an auction where OSK, a secured creditor,

was not allowed to credit bid, and OSK objected, asserting that its right to credit bid had been violated.

The United States Supreme Court has definitively stated that under § 363(k), "Debtors may not sell their property free of liens . . . without allowing lienholders to credit-bid." <u>RadLAX Gateway Hotel, LLC v. Amalgamated Bank</u>, 566 U.S. 639, 647 (2012). Here, Debtor has moved the Court to accept the highest bid at the auction of $1.9 million by MBM. The Court cannot do so because OSK was not allowed to credit bid.

### c. MBM's arguments of waiver fail on the undisputed facts before this Court.

MBM argues that OSK's waiver occurred when it failed to act at the time of the auction to raise the issue—presumably with this Court. This Court has found no requirement that auction irregularities must be raised only at the time of, or before the conclusion of, the auction.

Auction sales like this require Court approval. This Court finds that the Court review and approval process—currently taking place—is the right place for such irregularities or illegalities to be raised.

The law is quite clear that the only two ways a secured creditor's right to credit bid can be removed is (1) by Court action for cause, or (2) possibly by waiving that right after having the clear opportunity to raise it, declining to do so, and then attempting to raise it later. Neither of these occurred here. The Court did not revoke, remove, or modify OSK's right to credit bid "for cause." The only entity purporting to modify OSK's right to credit bid was Ten-X. Ten-X had no such authority.

OSK did not waive its right to credit-bid or arguments about credit bidding by failing to raise those rights when it had a clear opportunity to do so. MBM argues that OSK should and could have raised the issue at some point during the auction

after Ten-X said it would not allow the credit bid under its verified funds procedure. MBM fails to adequately explain how OSK had the clear opportunity to raise the issue and declined to do so. OSK raised the issue directly with Ten-X—the very entity that denied its right to credit bid. Further, MBM offers no authority to even suggest that OSK was required to run to the Court during the auction to appeal or challenge the decision of Ten-X.

The only authority offered by MBM even close to being on point is Murray Metallurgical. MBM argues that case stands for the proposition that a party must raise this issue at the time of adopting the bid procedures or the rights are waived. The Court disagrees.

Murray Metallurgical is distinguishable from this case on several grounds. There, the bidding procedures expressly allowed credit bidding on the sale of substantially all the assets. The secured creditor did not object to anything in the bid procedures and did not credit bid. Then later, when arguing about a § 1111(b) election, the secured creditor argued it was denied the right to credit bid—on a portion of the assets it wanted because the procedures required bidding on all assets together. The Court found that the secured creditor still had the right to credit bid at the auction and chose not to because it was not bidding on all the assets. It couldn't then later argue that it was denied the right to credit bid because it had that right but made the decision not to bid. The Court further found that the secured creditor was attempting to "sandbag" the Court and other parties by strategically declining to raise the issue at the right time—and then improperly trying to raise and assert it in another form at a later time.

This case, as noted above, shares none of the key elements in Murray Metallurgical. The bidding procedures did not mention credit bidding. Likewise, the bidding procedures did not attempt to restrict credit bidding in any way. There was no reason or opportunity for OSK to object. Further, OSK expressed its desire to

credit bid, and attempted to credit bid but was not allowed to do so. This is in direct contrast to Murray Metallurgical where the secured creditor had no desire to credit bid at the auction because the sale was for all assets. OSK did not—in any way—"sandbag" the Court or other parties. Simply put, this case shares little similarity to Murray Metallurgical and no similarity on the key analytical facts.

### III.  Classic Carriers does not control in this unusual case.

MBM also argues that the Court should deny OSK's arguments in the interest of finality and stability of the bidding process. It cites In re Classic Carriers Corp., 1990 WL 10594003 (S.D. Iowa Sept. 10, 1990), which states in relevant part, "[I]f parties are to be encouraged to bid there must be stability in such sales, and a time must come when a fair bid is accepted and proceedings are ended." Id. at *3. MBM believes this Court should apply Classic Carriers here to declare the proceedings were ended at the conclusion of the auction and no further arguments can be made. This Court disagrees.

The concern for finality address in Classic Carriers certainly has its place. It is best viewed as an important consideration. Finality and stability certainly encourage bidding and help achieve maximum results for the estate in most situations. These concerns, however, do not lead to the absolute rule MBM proposes—particularly where, as here, an important statutory right was subverted during the auction process. The process of an auction leading to a sale under §363 does in fact contemplate review and approval by the Court. Each bidder knows or should know that judicial review is built into this process and a sale cannot be treated as absolutely final until Court approval is secured. The pause for Court approval allows for fairness of process, review of irregularities, and protection of the rights of all parties to the proceeding. Here, we have the unusual case where the ideas of finality and stability in Classic Carriers must yield to ensure preservation of a

8

fundamental bidding right of secured creditors expressly protected and preserved by the Code.

### IV. OSK has filed a Notice of Credit-Bid.

During this process of review and Court approval, OSK has filed its Notice of Credit Bid at Doc. 290. It did so because it was not allowed to credit bid in the auction process. MBM objects for several reasons. It contends that the bidding procedures control and made no provision for later bidding. It also believes OSK's attempt to bid is too late—and again, should have been made at the auction.

The Court rejects MBM's arguments for many of the same reasons noted above. OSK did attempt to credit bid and was denied the right to bid. It timely asserted its rights. Moreover, the record shows that Ten-X and Debtor believed that OSK would be able to assert its credit bid at a later time.

This Court and others, in limited circumstances, have considered and approved bids coming in after the auction. The bid must be substantially better than the bid at auction, and there must be some reason offered why the bid was not or could not be made at the auction itself.

Bankruptcy courts clearly "have wide discretion in structuring sales of estate assets." In re Wintz Cos., 219 F.3d 807, 813 (8th Cir. 2000). Until it enters an order confirming the sale, a bankruptcy court has "ample latitude to strike a satisfactory balance between relevant factors of fairness, finality, integrity, and maximization of assets," and "must be accorded sufficient discretion to decide the truly close cases as best it can in view of these competing considerations." Lithograph Legends, LLC v. U.S. Trustee, No. 09-CV-943 (JMR), 2009 WL 1209469 at *2 (D. Minn. 2009) (quoting In re Food Barn Stores, Inc., 107 F.3d 558, 565–66 (8th Cir. 1997)). Specifically, a bankruptcy court may disapprove a proposed sale recommended by a debtor-in-possession "if it has an awareness there is another proposal in hand which,

from the estate's point of view, is better or more acceptable." In re Broadmoor Place Investments, L.P., 994 F.2d 744, 746 (10th Cir. 1993). When considering whether a transaction will be in the estate's best interest, it is equally within a bankruptcy court's discretion to consider factors other than the dollar amount. See id. at 745 (affirming dismissal of appeal where the bankruptcy court approved a smaller non-contingent bid and rejected a larger contingent bid).

This Court applies its wide discretion here "to strike a satisfactory balance between the relevant factors of fairness, finality, integrity, and maximization of assets." Food Barn, at 655. In applying these standards, the Court concludes that OSK's credit bid of $3 million is appropriate and acceptable as the best bid for the estate.

**It is so ordered.**

Ordered:
August 1, 2023

Thad J. Collins
Chief Bankruptcy Judge